**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**BAIT PRODUCTIONS PTY LTD.,**

      **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　Case No.  8:13-cv-161-Orl-31DAB

**ALEHANDRO AGUILAR,**

      **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration without oral argument on the following motions filed herein:

> **MOTION:**　**PLAINTIFF, BAIT PRODUCTIONS PTY LTD.'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT ALEHANDRO AGUILAR (Doc. 22)**
>
> **FILED:**　**July 24, 2013**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

    Plaintiff Bait Productions Pty Ltd., the Australian developer, producer, and distributor of the motion picture *Bait* (the "Motion Picture")[1], originally filed twenty-five identical cases against multiple individuals in each suit (totaling 1,536 Defendants) alleging that the Defendants unlawfully obtained and distributed for free unauthorized copies of *Bait* via a peer-to-peer network using the BitTorrent protocol.  Doc. 1.  Following orders to sever most of the cases and file suit against

---

[1] *Bait* is a mainstream movie regarding a shark attack that takes place in an Australian shopping center and is not an "adult film."

individual Defendants, Bait filed a number of cases against individual, identifiable Defendants[2], including Alehandro Aguilar.

### I. Factual History[3]

Bait Productions holds the copyright registration on the motion picture "Bait a/k/a Bait 3D," which includes copyright registration number PAu 3-553-375.  Doc. 1 ¶ 18; Doc. 1-2. "Under the [United States] Copyright Act, Bait Productions owns all right, title, and interests in the [PAu 3-553-375] copyright, including the right to sue for past infringement." Doc. 1 at ¶ 19 (effective date of registration: April 19, 2011).

In its Complaint, Bait Productions alleges that Defendant Aguilar unlawfully reproduced and distributed the Motion Picture by means of an interactive "peer to peer" file transfer protocol called BitTorrent.  Doc. 1 ¶¶ 6, 8.  Bait Productions recorded Defendant Aguilar publishing the Motion Picture via BitTorrent when Bait Productions' investigator downloaded the Motion Picture from Aguilar.  Doc. 1 ¶ 22. According to Bait Productions, Defendant Aguilar obtained a torrent file for the Motion Picture and loaded the file into BitTorrent. Doc. 1 ¶ 8.  Once loaded, "[Aguilar's] BitTorrent program used the BitTorrent protocol to initiate simultaneous connections with hundreds of other users possessing and 'sharing' copies of digital media," which included the Motion Picture. Doc. 1 ¶ 9. Bait Productions contends that each time Aguilar distributed a copy of the Motion Picture to others over the internet, particularly through BitTorrent, each recipient was able to distribute that copy to others without "degradation in sound or picture quality." Doc. 1 ¶ 15.  Thus, Defendant Aguilar's distribution of even one copy of the motion picture could result in "nearly instantaneous worldwide distribution to a limitless number of people." Doc. 1 ¶ 15.

---

[2]Of the 55 cases filed in the docket in the Middle District, all but five cases were voluntarily dismissed (as of September 23, 2013).

[3]Given the identical nature of the pleadings in the cases, much of the factual background and statement of the prevailing law is adopted from Judge Covington's Order (Doc. 17) in *Bait Productions Pty Ltd. v. Murray*, Case No. 8:13-cv169-T-33AEP (Aug. 23, 2013) (Covington, J.), with the exception of the amount of statutory damages awarded.

It is Bait Productions' position that "Defendant Aguilar republished and duplicated [the Motion Picture] in an effort to deprive [Bait Productions] of its exclusive rights in the Motion Picture." Doc. 1 ¶ 26. Bait Productions further alleges that Defendant Aguilar's acts of infringement were "willful, intentional, and in disregard of and with indifference to the rights of Bait Productions." Doc. 1 ¶¶ 32, 38.

## II. Procedural History

On January 16, 2013, Bait Productions filed a Complaint against Defendant Aguilar, a resident of Kissimmee, Florida, for copyright infringement and contributory copyright infringement under the United States Copyright Act. Doc. 1 ¶ 3. Aguilar failed to timely respond, and on June 6, 2013, the Clerk of the Court entered default against him. Doc. 21. Bait Productions subsequently filed the present Motion for Default Judgment on July 24, 2013. Doc. 23. Bait Productions also requests a permanent injunction against Aguilar enjoining him from directly or indirectly infringing Bait Productions' rights in the Motion Picture. Doc. 22 at 2-3. Bait Productions requests that this injunction include use of the internet to reproduce or copy the Motion Picture, to distribute the Motion Picture, or to make the Motion Picture available for distribution to the public, unless Bait Productions provides Aguilar with a license or express authority. Doc. 22 at 3. Bait Productions also requests the Court require Aguilar to destroy all illegally downloaded copies of the Motion Picture on any computer hard drive or server and any copy of the Motion Picture transferred onto any physical medium or device in Aguilar's possession, custody, or control. Doc. 22. Additionally, Bait Productions seeks an award of statutory damages pursuant to 17 U.S.C. § 504 and an award of attorney's fees and costs pursuant to 17 U.S.C. § 505. Doc. 22.

## III. Legal Standard

Federal Rule of Civil Procedure 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by

affidavit or otherwise, the clerk must enter the party's default." A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). *DirecTV, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).

The mere entry of a default by the Clerk does not, in itself, warrant the Court entering a default judgment. *See Tyco Fire & Sec. LLC v. Alcocer,* 218 F. App'x 860, 863 (11th Cir. 2007)(citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, a defaulted defendant is only deemed to admit the plaintiff's well-pled allegations of fact. *Id.* Furthermore, a default judgment bars the defendant from contesting those facts on appeal. *Id.* Therefore, before entering a default judgment for damages, a court must ensure that the well-pled allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought. *Id*. "Once liability is established, the court turns to the issue of relief." *Enpat, Inc. v. Budnic*, 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011). "Pursuant to Federal Rule of Civil Procedure 54(c), '[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings,' and a court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter." *Enpat*, 773 F. Supp. 2d at 1313 (citing Fed. R. Civ. P. 55(b)(2)).

**IV. Liability**

A. *Copyright Infringement*

To establish a prima facie case of copyright infringement, two elements must be proven: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). To satisfy the first element, "a plaintiff must prove that the work . . . is original and that the plaintiff complied with applicable

-4-

statutory formalities." *Bateman v. Mnemonics, Inc*., 79 F.3d 1532, 1541 (11th Cir. 1996) (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc*., 49 F.3d 807, 813 (1st Cir. 1995)). In a judicial proceeding, "a certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Once the plaintiff produces a certificate of registration, "the burden shifts to the defendant to demonstrate why the claim of copyright is invalid." *Bateman*, 79 F.3d at 1541.

To satisfy the second element, the plaintiff must establish that the "alleged infringer actually copied plaintiff's copyrighted material." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010). However, factual proof of copying is only part of satisfying the second element; "the plaintiff must also respond to any proof advanced by the defendant [signifying] that the portion of the work actually taken does not satisfy the constitutional requirement of originality." *Id.* "If a plaintiff survives a challenge to the originality requirement, they must also prove that 'the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar.'"
*Id.* (quoting *Lotus*, 49 F.3d at 813).

Because the Clerk has entered default against Aguilar (Doc. 21), this Court deems Aguilar to have admitted to Bait Productions' well-pled allegations of fact. Regarding the first element, Bait Productions holds the copyright registration on the Motion Picture. Doc. 1 ¶ 18; Doc. 1-2. Bait Productions has provided the Court with a copy of the certificate of registration, which has an effective date of April 19, 2011. Doc. 1-2. The effective date is "before or within five years after the first publication of the work," and therefore, constitutes "prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 410(c). As a result, the Court finds that Bait Productions has satisfied the first element necessary to prove copyright infringement.

Concerning the second element, Bait Productions has provided the Court with factual proof that Aguilar copied the Motion Picture: Bait Productions recorded Aguilar using an IP address on or about October 5, 2012, to download a torrent file for the Motion Picture. Doc. 1 at ¶¶ 8, 22. Because Aguilar failed to respond in this action, Bait Productions need not respond to any proof contradicting its claim of originality concerning the Motion Picture. Finally, the Court must accept Bait Productions' contention that each time Aguilar distributed a copy of the Motion Picture to others over the internet, particularly via BitTorrent, each recipient was able to distribute that copy to others without "degradation in sound or picture quality." Doc. 1 ¶ 15. Accordingly, Bait Productions has satisfied the requirement of proving the "copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar." *Latimer*, 601 F.3d at 1233 (quoting *Lotus*, 49 F.3d at 813). Therefore, this Court finds that Bait Productions has successfully satisfied the second element necessary to prove copyright infringement.

B. *Contributory Copyright Infringement*

One commits contributory copyright infringement by intentionally inducing or encouraging direct infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *see Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987) (stating "the test for contributory infringement has been formulated as 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'")(quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). Because Aguilar has not responded in this action, the Court accepts Bait Productions' factual allegations as true.

On or about October 5, 2012, Aguilar loaded a torrent file for the Motion Picture onto his computer. Doc. 1 ¶ 8. Because of Aguilar's involvement in BitTorrent, Aguilar could "initiate simultaneous connections with hundreds of other users possessing and 'sharing' copies of digital media," which included the Motion Picture. Doc. 1 ¶ 9. Bait Productions recorded Aguilar publishing

the Motion Picture via BitTorrent when Bait Productions' investigator downloaded a copy of the Motion Picture from Aguilar. Doc. 1 ¶ 22. As a recipient, the investigator was then "able to distribute that copy to others without 'degradation in sound or picture quality,'" potentially causing "nearly instantaneous worldwide distribution [of the Motion Picture] to a limitless number of people." Doc. 1 ¶ 15. Based on the well-pled allegations set forth in the Complaint, the Court finds that Aguilar had sufficient knowledge of his own infringing activity as well as the infringing conduct of others to be held liable for contributory copyright infringement. In view of the Court finding the factual allegations in Bait Productions' Complaint, taken as true, sufficient to establish that Aguilar is liable for copyright infringement and contributory copyright infringement of the Motion Picture, this Court will proceed to the issue of relief.

### V. Relief Requested

Once liability is established, the district court must also assess damages. *Chanel, Inc. v. French*, 2006 WL 3826780 *2 (S.D. Fla. 2006). The traditional remedies for violations of the Copyright Act include injunctive relief, impoundment and destruction of infringing articles, money damages, and costs and fees. 17 U.S.C. §§ 502-505.

Default judgments for both injunctive and monetary relief may be entered when a defendant fails to respond to or defend against claims of copyright infringement. *Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F.Supp.2d 1310, 1312 (S.D. Fla. 2003). As to monetary damages, Plaintiff can elect to seek statutory damages, actual damages, or a disgorgement of Defendants' profits. *See id.* at 1312; *see also Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998) (party may elect to waive a jury trial and allow the court to determine its statutory damages). "In copyright cases, 'although attorneys' fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely" in default cases. *Arista*, 298 F.Supp.2d at 1316;

*Broadcast Music, Inc. v. Dano's Restaurant Systems, Inc.*, 902 F.Supp. 224, 227 (M.D.Fla. 1995).

    A. *Injunction*

Pursuant to 17 U.S.C. § 502 (a), this court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Id.*

In its Complaint, Bait Productions did not provide the Court with any evidence of actual damage suffered as a result of Aguilar's infringement of the Motion Picture, specifically the amount of revenue lost, if any. However, Bait Productions has sufficiently established that Aguilar's conduct "is causing and, unless enjoined and restrained by this Court, will continue to cause Bait Productions great and irreparable injury." Doc. 1 ¶¶ 34, 40.  Additionally, the Court finds that due to the possibility of future infringement of the Motion Picture by Aguilar and others, monetary damages alone are inadequate to compensate Bait Productions for any injury it has sustained or will potentially sustain in the future. Furthermore, Aguilar has not provided the Court with any evidence purporting to show his claim to the Motion Picture; therefore, Aguilar would suffer minimal, if any, hardship as a result of the injunction being issued. On the other hand, Bait Productions, as the holder of the copyright of the Motion Picture (Doc. 1 ¶ 18; Doc. 1-2), could sustain hardship, specifically lost revenue, if Aguilar is not enjoined from engaging in the infringing activity. Finally, there is no indication that the public interest would be disserved by the issuance of a permanent injunction

against Aguilar. Therefore, upon review of the well-pled allegations, taken as true, the Court finds that granting a permanent injunction against Aguilar is proper. Accordingly, Aguilar is enjoined from directly or indirectly infringing Bait Productions' rights in the Motion Picture. This includes use of the internet to reproduce or copy the Motion Picture, to distribute the Motion Picture, or to make the Motion Picture available for distribution to the public, unless Aguilar receives a license or express authority from Bait Productions. Furthermore, Aguilar is required to destroy all illegally downloaded copies of the Motion Picture on any computer hard drive or server and any copy of the Motion Picture transferred onto any physical medium or device in Aguilar's possession, custody, or control.

### B. *Statutory Damages*

The United States Copyright Act allows a copyright owner to recover statutory damages for an infringement. In awarding statutory damages under the Copyright Act, for each work infringed by any one infringer that is liable individually, or for which any two or more infringers are liable jointly and severally, the Court generally may award not less than $750 or more than $30,000, "as the Court considers just." 17 U.S.C. § 504(c)(1). However, the statutory damages to be awarded under the Copyright Act may be reduced to as low as $200 per work infringed per defendant where the infringer sustains the burden of proving that he was not aware and had no reason to believe that his acts constituted copyright infringement. 17 U.S.C. § 504(c)(2). Additionally, the Court may increase the statutory damages to as much as $150,000 per work infringed where the copyright owner sustains the burden of proving that the infringement was committed willfully. *Id.* "The Court has wide discretion to set an amount of statutory damages." *Tiffany (NJ), LLC v. Dongping*, No. 10-61214-civ, 2010 WL 4450451, at *6 (S.D. Fla. Oct. 29, 2010); *see Cable/Home Commc'n Corp. v. Network Prod. Inc.*, 902 F. 2d 829, 852 (11th Cir. 1990)(quoting *Harris v. Emus Records Corp.*, 734 F. 2d 1329, 1335 (9th Cir. 1984) stating, "the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.").

"'Statutory damages are not intended to provide a plaintiff with a windfall recovery;' they should bear some relationship to the actual damages suffered." *Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC*, 554 F. Supp. 2d 1303, 1313 (M.D. Fla. 2008)(quoting *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 568-69 (S.D.N.Y. 1995)). Bait Productions contends that Aguilar's acts of infringement were "willful, intentional, and in disregard of and with indifference to the rights of Bait Productions." Doc. 1 ¶¶ 32, 38. As a result of Aguilar's default, the Court may infer Aguilar willfully engaged in copyright infringement against Bait Productions. *See Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003)(inferring that the alleged infringement was willful, as a result of defendant's default, based on allegations of willfulness in plaintiff's complaint).

Bait Production seeks statutory damages of $150,000. Bait Productions has failed to provide any evidence of its own lost sales, profits, or licensing fees as a result of the infringement to assist the Court in determining the appropriate amount of statutory damages to award. The vast majority of other courts assessing statutory damages in similar cases in which the defendants have downloaded copyrighted material via bit torrent have assessed damages of approximately $6,000 based on an inference of willfulness:

> [T]he Court finds it unnecessary to determine whether Defendants' infringement was "willful" because it finds that a statutory damages award of $6,000 per Defendant pursuant to 17 U.S.C. 9504(c)(1) would sufficiently reimburse Plaintiff for Defendants' participation in the infringing swarm and would adequately discourage wrongful conduct. Plaintiff has pointed the Court to one case in which, under similar circumstances, the Court granted a statutory award of $30,000 against the defaulting defendant. *See Achte/Neunte Boll King Beteiligungs GMBH & Co KG v. Palmer*, No. 2:11–cv–770–FtM–29SPC, 2011 WL 4632597, at *2 (M.D. Fla. Oct. 6, 2011). However, the vast majority of courts to consider statutory damages in similar cases regarding copyright infringement by use of BitTorrent or other online media distribution systems have found damages of up to $6,000 per work to be sufficient. *See, e.g., Capitol Records, Inc. v. Mattingley*, 461 F.Supp.2d 846, 853 (S.D.Ill.2006) (awarding statutory damages of $750 per infringement for a total amount of $3,750); *Disney Enters. v. Farmer*, 427 F.Supp.2d 807, 817 (awarding statutory damages of $1,200 per infringement for a total award of $6,000); *UMG Recordings, Inc. v. Adams*, No. 08–cv–534–JPG. 2008 WL 4516309, at *1, *4 (S.D.Ill. Oct.3, 2008) (awarding statutory damages of $750 per infringement for a total award of $6,000); *Carsagno*,

-10-

> 2007 WL 1655666, at *4 (awarding statutory damages of $6,000 in a nearly identical "John Doe" action); *Universal City Studios Prod., LLP v. Howell*, No. 3:06–cv–395JJ–33TEM, 2007 WL 853471, at *2 (M.D.Fla. Mar.16, 2007) (awarding statutory damages of $6,000 and listing other cases that held the same). Accordingly, the Court awards Plaintiff $6,000 in statutory damages per Defendant, pursuant to 17 U.S.C. § 504(c)(1).

*Patrick Collins, Inc. v. Gillispie*, 2012 WL 666001, *3, n.1 (D. Md. Feb. 23, 2012); *see Collins v. Sangster*, 2012 WL 458905 (D. Md. Feb. 10, 2012) (awarding $6,000 in statutory damages per defendant as part of the swarm in bit torrent download of adult film); *see also Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402 (D. Md. 2006) (awarding $6,500 per infringement for bit torrent download of copyrighted mainstream television programs).

Similar to the above cited cases involving BitTorrent downloads, the Court finds that the appropriate award for statutory damages is **$6,000**, particularly in light of the lack of any evidence whatsoever of lost profits or actual damages from Bait Productions. *Cf. Bait Productions Pty Ltd. v. Murray*, Case No. 8:13-cv169-T-33AEP (Aug. 23, 2013) (Covington, J.) (awarding $25,000 in statutory damages).

### C. *Attorney's Fees and Costs*

In addressing attorney's fees and costs, the Copyright Act states:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. The Copyright Act seeks to stimulate artistic creativity for the general public good and discourage infringement. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526-27 (1994). Awarding attorney's fees addresses these goals because it enables people to vindicate or defend their rights where it would otherwise be uneconomical to do so. *Id*. at 529. Fees and costs of suit are commonly awarded by courts in copyright infringement default cases. *Arista*, 298 F. Supp. 2d at 1316.

Bait Productions has requested $1,275 in attorney's fees and $400 in costs. Doc. 22 at 3, 10-11. According to Bait Productions' counsel, Richard E. Fee, Esq., he spent three hours performing legal services at a rate of $425 per hour. Doc. 22-3 ¶ 8. A rate of $425 per hour for what is essentially a routine default judgment in a routine copyright case is excessive, even for a twenty-four year intellectual property lawyer such as Mr. Fee. The Court finds that an hourly rate of $300 to be commensurate with the level of expertise necessary for this case, for total attorney's fees of $900. Bait Productions is entitled to recover the $400 in costs incurred to bring this action against Aguilar, which includes a $350 filing fee and $50 process server fee. Doc. 22 at Ex. 2 ¶ 9. Upon review of Bait Productions' Motion and accompanying Fee Declaration, the Court determines that an attorney's fee award of $900 and $400 in costs is reasonable under the circumstances of this case.

## CONCLUSION

It is respectfully **RECOMMENDED** that Final Default Judgment of **$6,000** for statutory damages and attorney's fees of **$1,300** be entered, with the injunctive relief as proposed by Bait Productions. *See* Doc. 22-4 ¶¶ A, B.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 26, 2013.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy